# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| SUSAN PEDER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SCOTTSDALE INDEMNITY COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 2:17-CV-1868<br><br>ORDER ON PLAINTIFF AND DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on cross-motions for summary judgment filed simultaneously[1] by plaintiff Susan Peder, Dkt. #24, and defendants Scottsdale Indemnity Company ("Scottsdale") and Freedom Specialty Insurance Company ("Freedom Specialty"). Dkt. #26. For the reasons that follow, the Court grants plaintiff's cross-motion, and denies defendants' cross-motion.

## **BACKGROUND**

### A. Alex Peder's Employment with X10

Plaintiff's ex-husband, Alex Peder ("Peder"), was hired in August 1996 to work with X10 USA, Inc. ("X10 USA"). Ex. A, Dkt. #28-1 (Peder Dep.) at 24:11–18. X10 USA was wholly owned by X10 Limited, and George Stevenson was the head of X10 Limited. Id. at

---

[1] The parties agreed to simultaneously file cross-motions addressing only coverage and policy interpretation issues. Dkt. #26 at 2.

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

26:22–25. Peder reported to Stevenson. Id. at 24:19–20. Eventually, Peder was made the president of X10 Wireless Technology, Inc. ("X10"), a new company formed to develop their internet sales business. Id. at 27:9–28:2. Stevenson was also the chairman of X10. Id. at 28:20. Plaintiff alleges that, in 2008, Stevenson expressed dissatisfaction with the company's direction and a desire to make major changes, including possibly terminating senior executives. Ex. G, Dkt. #28-2 at ¶ 13. However, Stevenson did not want Peder to leave X10 until a decision had been made regarding these changes. Id. at ¶ 14. To induce him to stay, Stevenson offered Peder a severance package of one year's salary and benefits if he remained with X10 until the end of the year, or until X10 made certain decisions regarding its senior executives. Ex. A, Dkt. #28-1 at 83:22–84:6; see Ex. A, Dkt. #27 at ¶¶ 13–14.

Peder stayed with X10 and received his last paycheck on December 24, 2008. Ex. A, Dkt. #27 at ¶ 16. It was company policy to pay a departing employee the cash equivalent of the vacation time that they had accrued at the time of their final paycheck. Ex. B, Dkt. #28-1 at ¶ 8. Peder had by that time accrued 559.88 hours of unused vacation time, and his hourly rate of pay was $158.65 per hour accrued. However, his final paycheck from X10 did not include his severance pay or his cashed-out vacation time. Ex. C, Dkt. #28-1 (Mayer Dep.) at 42:13–20; Ex. E, Dkt. #28-2 (Schott Dep.) at 49:19–50:12, 106:9–23; see Ex. A, Dkt. #27 at ¶¶ 17–19. Peder also continued to act as X10's president and director between January 2009 and June 2010. He was not paid a salary during that time. Ex. A, Dkt. #28-1 at 113:3–6, 114:18–116:11. He expected to be compensated for his services, but he was not. Id. at 112:9–114:6; see Ex. A, Dkt. #27 at ¶¶ 20–21.

B. Plaintiff's Action before the King County Superior Court

Peder's rights and claims were assigned to plaintiff as part of their divorce. Plaintiff accordingly filed a lawsuit against X10 and others. Ex. G, Dkt. #28-2; see Peder v. X10 USA, Inc. et al., No. 11-2-44104-1-KNT (King County Sup. Ct.) ("the Underlying Action"). She brought four claims: failure to pay wages under RCW 49.48 et seq. and RCW 49.52 et seq., id. at ¶¶ 22–24, breach of an oral contract to pay severance, id. at ¶¶ 25–27, quantum meruit or

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 2

unjust enrichment, id. at ¶¶ 28–30, and promissory estoppel, as an alternative to the breach of oral contract claim, id. at ¶¶ 31–33. She requested payment for all wages due, double damages for all wages owed under Washington law, attorney's fees and costs, see RCW 49.48.030; RCW 49.52.070, and prejudgment and post judgment interest. Ex. G, Dkt. #28-2 at 27.

At the time, X10 was insured under Business and Management Indemnity Policy Number EK13036412 issued by Scottsdale ("the Policy"). Ex. H, Dkt. #28-2 at 28–89. X10 tendered the Underlying Action to Scottsdale. In a letter dated January 18, 2012, Freedom Specialty, acting on behalf of Scottsdale, see Dkt. #26 at 1, agreed to defend Scottsdale under a reservation of rights. Ex. I, Dkt. #28-3 at 3. Plaintiff's Underlying Action was characterized as an "Employment Practices Claim based on [an] alleged Employment Practices Wrongful Act against an insured… brought on behalf of a former Employee within the meaning of the Policy." Id. The letter specified that plaintiff's actions for quantum meruit and promissory estoppel did not constitute "Employment Practices Wrongful Acts" within the meaning of the Policy. Id. at 5. It also stated that damages sought by plaintiff for amounts owed under an employment contract or wages were excluded from the definition of "Loss" under the Policy. Id. at 6. Scottsdale reserved the right to deny coverage for "such amounts that do not constitute Loss, pursuant to Section 8.10 of the Employment Practices Coverage Section of the Policy." Id.

On December 4, 2012, in response to a Request for Statement of Damages from counsel for the defendants in the Underlying Action, plaintiff's counsel indicated that plaintiff was seeking damages of $88,824 for cashed-out vacation time, $310,000 for severance, $117,401 for unjust enrichment, $516,225 for double damages, and attorney's fees/costs and prejudgment interest in an amount to be determined. She also expressed plaintiff's interest in mediating. Ex. J, Dkt. #28-3 at 10. The first attempt at mediation on March 22, 2013 failed. On April 10, 2013, Scottsdale sent X10's counsel another letter reiterating that there was "no coverage for [] Peder's unpaid wages or vacation pay, or any severance promised by [X10]," because Scottdale's Policy provided no coverage for "wages." Ex. K, Dkt. #28-3 at 14. The second attempt at mediation took place on June 27, 2013. Ex. L, Dkt. #28-3 at 22. The parties arrived at

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 3

"a settlement agreement subject to funding in the amount of $550,000." Id. The agreement was conditioned upon Scottsdale providing a written commitment to fund the entire $550,000 settlement by July 22, 2013 and delivering payment by August 23, 2013. Id. at 24. Counsel for defendants in the Underlying Action communicated this settlement to Scottsdale on July 1, 2013 and expressed their hope that Scottsdale would fund the settlement. Id. at 22–23. They also expressed their belief that an adverse judgment "[would] likely drive X10 into bankruptcy and out of business." Id. at 23. In a letter dated July 22, 2013, Scottsdale reaffirmed its position that "the definition of 'Loss' in its [P]olicy excluded both 'amounts owed under any employment contract' and 'any amount owed as wages.'" Ex. M, Dkt. #28-3 at 31. It expressed a willingness to contribute to a reasonable settlement of the "covered aspects" of the Underlying Action and offered $150,000 towards the settlement. Id. at 32.

On August 2, 2013, shortly after the deadline for funding the $550,000 settlement had passed, X10 filed a Chapter 7 bankruptcy petition. Ex. N, Dkt. #28-5 at 2–62. On August 31, 2015, plaintiff and the Chapter 7 Bankruptcy Estate of X10 ("the Estate") entered into a "Settlement, Assignment of Claims, and Release Agreement." Ex. P, Dkt. #28-6 at 14–22. The Estate stipulated to entry of a $550,000 judgment against it and assigned to plaintiff all of X10's rights and claims against Scottsdale. Id. at 17. The Bankruptcy Court approved the settlement on February 4, 2016. Ex. W, Dkt. #28-7 at 15–16. On April 5, 2017, the King County Superior Court entered an order finding the settlement reasonable. Ex. X, Dkt. #28-7 at 18–19; see Ex. Y, Dkt. #28-7 at 22–24. Plaintiff demanded that Scottsdale pay the settlement amount in a letter dated July 28, 2017. Ex. Z, Dkt. #28-7 at 26–27. In its response on August 21, 2017, Scottsdale refused, reiterating that plaintiff's demands for cashed-out vacation time, severance pay, and wages earned by Peder for work performed following his termination by X10 were excluded from coverage under the Policy by "one or more carve-outs in the definition of Loss for wages, amounts owed under contract, and insurable relief (i.e., restitution)." Ex. Q, Dkt. #28-6 at 24.

Plaintiff filed a complaint against Scottsdale and Freedom Specialty in the King County Superior Court on November 14, 2017. Dkt. #1-2 at 1–12. She brought claims for declaratory

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

judgment, id. at ¶¶ 40–45, breach of contract, id. ¶¶ 46–48, insurance bad faith, id. at ¶¶ 49–54, violations of Washington's Insurance Fair Conduct Act ("IFCA"), id. at ¶¶ 55–61, and violations of Washington's Consumer Protection Act ("CPA"), id. at ¶¶ 62–67. See RCW 48.30.010 *et seq*; see RCW 19.86.010 *et seq*. The case was removed to this Court on December 14, 2017. Dkt. #1 at 1–5; see 28 U.S.C. §§ 1332, 1441, 1446. Cross-motions for partial summary judgment were filed on November 21, 2018 only on coverage and policy interpretation issues. Dkt. #24; Dkt. #26. Plaintiff requests a declaration that the full amount of the $550,000 judgment is covered under the Policy, or, in the alternative, that the Policy's "Wage and Hour Claim Endorsement" applies and $250,000 of the judgment is covered. Dkt. #24 at 30. Defendants request a declaration that Scottsdale had no duty to indemnify X10 for damages arising from claims for unpaid wages, breach of oral contract, quantum meruit, unjust enrichment, and promissory estoppel. Dkt. #26 at 1.

## DISCUSSION

### A. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Because federal jurisdiction in this case is based on diversity of citizenship, we apply the substantive law of the state of Washington." Conrad v. Ace Prop. & Cas. Ins. Co., 532 F.3d 1000, 1004 (9th Cir. 2008) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)); see MKB Constructors v. Am. Zurich Ins. Co., 49 F. Supp. 3d 814, 832–33 (W.D. Wash. 2014).

"Under Washington law, the interpretation of an insurance contract is a matter of law." Am. Home Assur. Co. v. Cohen, 815 F. Supp. 365, 368 (W.D. Wash. 1993), aff'd and remanded, 67 F.3d 305 (9th Cir. 1995) (citing McDonald v. State Farm Fire and Cas. Co., 119 Wn. 2d 724, 730 (1992)). "Summary judgment is proper unless an ambiguity in the contract exists and contradictory evidence is introduced to clarify the ambiguity." Id. (citing Time Oil Co. v. Cigna Property and Cas. Ins. Co., 743 F. Supp. 1400, 1406–07 (W.D. Wash. 1990)).

"Insurance policies are construed as contracts." Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn. 2d 654, 665 (2000), as amended (Jan. 16, 2001) (quoting Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co., 134 Wn. 2d 413, 427 (1998)). "An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Id. at 666 (quoting B & L Trucking & Const. Co., 134 Wn. 2d at 427) (internal quotation marks omitted). "The language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense." Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn. 2d 869, 881 (1990) (quoting Dairyland Ins. Co. v. Ward, 83 Wn. 2d 353, 358 (1974)). "Overall, a policy should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective." Pub. Util. Dist. No. 1 of Klickitat Cty. v. Int'l Ins. Co., 124 Wn. 2d 789, 799 (1994) (quoting Transcon. Ins. Co. v. Washington Pub. Utilities Districts' Util. Sys., 111 Wn. 2d 452, 457 (1988)).

"When construing the policy, the court should attempt to give effect to *each* provision in the policy." Moeller v. Farmers Ins. Co. of Washington, 173 Wn. 2d 264, 271–72 (2011) (quoting Allstate Ins. Co. v. Peasley, 131 Wn. 2d 420, 424 (1997)). A determination of coverage involves two steps. First, "the insured must show the loss falls within the scope of the policy's insured losses." Id. (quoting McDonald v. State Farm Fire & Cas. Co., 119 Wn. 2d 724, 731 (1992) (alterations omitted). Second, "in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.'" Id. (quoting McDonald, 119 Wn. 2d at 731).

"Insurance clauses are to be liberally construed to provide coverage whenever possible." Odessa Sch. Dist. No. 105 v. Ins. Co. of Am., 57 Wn. App. 893, 897, cause dismissed sub nom. Odessa Sch. Dist. No. 105 v. Ins. Co. of N. Am., 115 Wn. 2d 1022 (1990) (citing Riley v. Viking Ins. Co., 46 Wn. App. 828, review denied, 108 Wn. 2d 1015 (1987)). "If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists." Weyerhaeuser Co., 142 Wn. 2d at 666 (quoting B & L Trucking

& Const. Co., 134 Wn. 2d at 427). "A clause is ambiguous only 'when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.'" Quadrant Corp. v. Am. States Ins. Co., 154 Wn. 2d 165, 171 (2005) (quoting Weyerhaeuser Co., 142 Wn. 2d at 666). If a provision is ambiguous on its face, the Court "must attempt to discern and enforce the contract as the parties intended." Odessa Sch. Dist. No. 105, 57 Wn. App. at 897 (citing Transcontinental Ins. Co. v. Washington Pub. Util. Dist. Sys., 111 Wn. 2d 452, 456–57 (1988)). "Any remaining ambiguity must be given a meaning and construction most favorable to the insured." Id. (citing Transcontinental. Ins. Co., 111 Wn. 2d at 457). "This rule applies with added force in the case of exceptions and limitations to a policy's coverage." Shotwell v. Transamerica Title Ins. Co., 91 Wn. 2d 161, 168 (1978) (citing Witherspoon v. St. Paul Fire & Marine Ins. Co., 86 Wn. 2d 641, 650 (1976)).

**B. Scottsdale Policy**

The Policy states, "[Scottsdale] shall pay the Loss of [X10] which [X10] [has] become legally obligated to pay by reason of an Employment Practices Claim … for an Employment Practices Wrongful Act." Ex. H, Dkt. #28-2 at 37. An Employment Practices Claim is defined to include "a written demand against [X10] for damages or other relief" and "a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against [X10] seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom" that is "brought by or on behalf of an Employee in their capacity as such." Id. at 38. An Employment Practices Wrongful Act includes any actual or alleged "breach of an actual or implied employment contract." Id.

Loss "means the damages, judgments, settlements, front pay and back pay, pre-judgment or post judgment interest awarded by a court, and Costs, Charges and Expenses incurred by [X10]." Id. at 39. It does not include "matters uninsurable under the laws pursuant to which this Policy is construed; … amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract; [or] … any amount owed as wages to any Employee, other than front pay or back pay." Id. Costs, Charges and Expenses "means

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 7

reasonable and necessary legal costs, charges, fees and expenses incurred by [X10] in defending Claims and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability." Id. at 37.

Endorsement No. 31 also specifies that "[Scottsdale] shall pay the Loss of [X10] which [W10] [has] become legally obligated to pay by reason of a Wage and Hour Claim … for a Wage and Hour Wrongful Act." Id. at 85. A Wage and Hour Wrongful Act means "any actual or alleged violation(s) of the Fair Labor Standards Act or any similar federal, state or local law governing or relating to the payment of wages, overtime, on-call time, rest periods, minimum wages or the classification of Employees …" Id. A Wage and Hour Claim means "a written demand against [X10] for damages or other relief; or … a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against [X10] seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom" that is "brought by or on behalf of one or more Employees solely alleging any Wage and Hour Wrongful Act." Id. The "maximum aggregate Limit of Liability for all Loss as a result of all Wage and Hour Claims" is 250,000. Id. at 86.

**C. Settlement Agreement**

Plaintiff's settlement with the Estate on August 2, 2013 did not specify the claims on which it was based. Ex. P, Dkt. #28-6 at 17. The Estate merely stipulated to entry of a judgment in the Underlying Action in favor of plaintiff in the amount of $550,000. Id. The Underlying Action itself was based on four claims of failure to pay wages, breach of contract, or, in the alternative, promissory estoppel, and quantum meruit. Ex. G, Dkt. #28-2 at ¶¶ 22–33. On December 4, 2012, plaintiff's counsel sent a letter stating that plaintiff was seeking damages of $88,824 for cashed-out vacation time, $310,000 for severance, $117,401 for unjust enrichment, $516,225 for double damages, and attorney's fees/costs and prejudgment interest in an amount to be determined. Ex. J, Dkt. #28-3 at 10.

As plaintiff's judgment is undifferentiated, she need only prove that any one of her claims is covered under the Policy in order to establish Scottsdale's liability to pay the amount of $550,000. Prudential Prop. & Cas. Ins. Co. v. Lawrence, 45 Wn. App. 111, 121 (1986) ("The settlement agreement itself specified only that it involved 'all claims' of the parties. Consequently, the trial court did not err in ordering [the insurer] to pay the entire settlement."). However, the difficulty with this evaluation is that plaintiff's damages are not exactly mapped onto plaintiff's claims in her complaint in the Underlying Action. For convenience, the Court will evaluate whether or not there is coverage under the Policy for each type of damages, as follows: (1) unpaid wages, which includes cashed-out vacation time, severance pay[2] and unpaid wages for the work performed by Peder after termination, (2) unjust enrichment for Peder's uncompensated work,[3] and (3) double damages and attorney's fees and costs.

**D. Unpaid Wages: Severance Pay, Vacation Time and Uncompensated Services**

Loss under the Policy excludes "any amount owed as wages to any Employee, other than front pay or back pay." Ex. H, Dkt. #28-2 at 39. The terms "front pay" and "back pay" are not defined. See generally id. Defendants argue that plaintiff's claims for Peder's cashed-out vacation time and severance pay[4] are excluded under the Policy, because they are forms of wages under Washington law.[5] Dkt. #26 at 12. Plaintiff does not dispute that severance pay and

---

[2] Plaintiff's claim for severance pay could be considered as part of her claim for unpaid wages or her claim for breach of contract, as she does not specify one or the other. Ex. G, Dkt. #28-2 at ¶¶ 22–27.

[3] The damages for Peder's uncompensated work are evaluated as being brought both pursuant to plaintiff's claim for unpaid wages and her claim for unjust enrichment.

[4] "Loss" under the Policy is defined to exclude "amounts owed under an employment contract." Ex. H, Dkt. #28-2 at 39. Defendants also argue that plaintiff's claim for severance pay is excluded because the severance was owed pursuant to the oral employment contract entered into between Peder and Stevenson. Dkt. #26 at 11–12; Dkt. #29 at 8–9. The Court considers its exclusion as "wages" first.

[5] See RCW 49.46.010 (defining "wage" as "compensation due to an employee by reason of employment" in Minimum Wage Requirements and Labor Standards); see Mestrovac v. Dep't of Labor & Indus. of State, 142 Wn. App. 693, 712 (2008), as amended on denial of reconsideration (Feb. 29, 2008), aff'd on other grounds sub nom. Kustura v. Dep't of Labor & Indus., 169 Wn. 2d 81(2010) ("Holiday and vacation pay may be included in the wage calculation by either (1) including the cash value of the employer's contributions for hourly leave in determining the hourly pay rate or (2)

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

cashed-out vacation time "may reasonably be considered" wages, but argues that they and her claim for Peder's uncompensated work[6] are not excluded under the Policy because they constitute back pay. Dkt. #24 at 19.

As defendants point out, the Eastern District of California rejected a similar argument in California Dairies Inc. v. RSUI Indem. Co. with regard to an insurance policy that also excluded coverage for "any amounts owed as wages to any Employee, other than front pay or back pay." 617 F. Supp. 2d 1023, 1036 n.6 (E.D. Cal. 2009). The district court found that the terms "front pay" and "back pay" are "terms of art commonly used in the context of discrimination claims, which are covered Employment Practices Wrongful Acts." Id. Neither party cites to any Washington decisions interpreting similar language. Plaintiff advocates using the ordinary English dictionary definition of the term. Macmillan Dictionary, for instance, defines "back pay" as "money that is owed to someone who works for a company but that has not been paid yet." Ex. T, Dkt. #28-7 at 6.

"When construing the policy, the court should attempt to give effect to *each* provision in the policy." Moeller, 173 Wn. 2d at 271–72 (2011) (internal citation omitted). Defendants argue that plaintiff's proposed interpretation would render the Policy language excluding coverage for wages superfluous, because all wages owed to an employee would necessarily be "back pay." Dkt. #32 at 7–8. The Court agrees. See also Fox v. Eclear Int'l CO. Ltd., No. CV 17-0865 AS, 2018 WL 6118525, at *11 (C.D. Cal. June 13, 2018); Rivera v. Baker W., Inc., 430 F.3d 1253, 1259 (9th Cir. 2005). Plaintiff is correct in that the Policy categorizes back pay as a kind of wages by excluding "any amount owed as wages to any Employee, *other than* front pay or back

---

including the leave hours taken in determining the total number of hours worked."); Dice v. City of Montesano, 131 Wn. App. 675, 680 (2006) (affirming the trial court's award of "severance pay as wages").

[6] Plaintiff groups damages for severance, cashed-out vacation time, and uncompensated work together and argues that they are not excluded. Dkt. #24 at 19. Defendants in their cross-motion argued only that severance and cashed-out vacation time were excluded by the Policy's definition of Loss. Dkt. #26 at 12–13. The Court considers coverage for all three together, as previously explained.

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10

pay" from the definition of Loss. Ex. H, Dkt. #28-2 at 39 (emphasis added). Front pay and back pay are indeed types of wages. However, to interpret back pay as "payment that is in arrears, not current, or overdue," see Ex. R, Dkt. #28-6 at 30–32; Ex. S, Dkt. #28-7 at 1–4, would render the exclusion of "any amount owed as wages" meaningless. The Policy must not be given a "'strained or forced construction' leading to absurd results." Eurick v. Pemco Ins. Co., 108 Wn. 2d 338, 341 (1987) (quoting E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wn. 2d 901, 907 (1986). An average person, see Boeing Co., 113 Wn. 2d at 881, may or may not interpret "front pay" and "back pay" as specifically pertaining to employment discrimination or wrongful termination claims. Fox, 2018 WL 6118525 at *11. But they would not, in context, interpret back pay as simply referring to unpaid wages so as to render the distinction redundant. "To allow the exclusion to be circumvented … would be to succumb to a 'forced' or 'strained' interpretation totally at odds with the interpretation the average person would give the [P]olicy. The average policyholder would read the exclusion as a real—not an illusory—limitation on coverage." Eurick, 108 Wn. 2d at 341. The federal labor regulations that plaintiff refers to do not compel a different conclusion. See 20 C.F.R. § 404.1232 (defining back pay as "pay received in one period of time which would have been paid in a prior period of time except for a *wrongful or improper action by an employer*") (emphasis added); Ex. V, Dkt. #28-7 at 12 (defining backpay as "the difference between what the employee was paid and the amount he or she *should have been paid*") (emphasis added).

The Court concludes that plaintiff's claim for unpaid wages is not covered by the Policy, based on the exclusion for an amount owed as wages to an employee. The Court therefore need not reach the exclusion for "amounts owed under any employment contract" under the Policy as it applies to plaintiff's claim for unpaid wages. See Ex. H, Dkt. #28-2 at 39; see Ex. G, Dkt. #28-2 at ¶¶ 25–27, 31–33 (plaintiff's claims for breach of contract to pay severance and promissory estoppel). The Court also need not reach the parties' arguments regarding the insurability of these claims as restitutionary. See Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn. 2d 517, 556 (2000); ("intentional, willful, criminal, and similar conduct may be

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 11

held 'uninsurable' as a matter of public policy, regardless of whether such conduct is excluded by the contract language") (internal citation and quotation marks omitted).

### E. Unjust Enrichment

Plaintiff brought a claim against X10 in the Underlying Action for unjust enrichment or quantum meruit.[7] Ex. G, Dkt. #28-2 at ¶¶ 28–33. Defendants argue that this is excluded by the Policy because it is not an "Employment Practices Claim[s] … for an Employment Practices Wrongful Act." Ex. H, Dkt. #28-2 at 37.

Determining an insurer's "duty to defend and pay requires an analysis of all of the facts and is not limited to those matters recited in the injured party's complaint." Farmers Home Mut. Ins. Co. v. Ins. Co. of N. Am., 20 Wn. App. 815, 819 (1978) (citing Ins. Co. of N. Am. v. Ins. Co. of State of Pennsylvania, 17 Wn. App. 331, 334 (1977)). Plaintiff argues that her claim "seek[s] damages to due to X10's wrongful failure to pay various forms of compensation that Peder alleged X10 promised to [] Peder to induce him to continue working for X10 – which he did – but ultimately did not pay." Dkt. #24 at 27. She argues that this falls within the definition of "Employment Practices Wrongful Act" as "employment-related … misrepresentation." Ex. H, Dkt. #28-2 at 38.

An unjust enrichment claim has two requirements. "First, the enrichment of the defendant must be unjust; and second, the plaintiff cannot be a mere volunteer." Lynch v. Deaconess Med. Ctr., 113 Wn. 2d 162, 165 (1989). A claim of fraud or intentional misrepresentation[8] has nine

---

[7] In their briefing, parties group plaintiff's claims for unjust enrichment and promissory estoppel together. However, plaintiff's claim for unjust enrichment pertains to the uncompensated work performed by Peder between January 1, 2009 and June 9, 2009. Ex. G, Dkt. #28-2 at ¶¶ 16–20; Ex. J, Dkt. #28-2 at 10. Her claim for promissory estoppel was brought as an alternative to her claim for breach of contract, which in turn is based on X10's breach of the oral contract to pay severance. Ex. G, Dkt. #28-2 at ¶¶ 25–27, ¶¶ 31–33. The Court has already considered plaintiff's claim for severance pay and found that it is not covered under the Policy. The Court therefore evaluates plaintiff's claim for unjust enrichment independently.

[8] The relevant sub-section in the definition of an Employment Practices Wrongful Act under the Policy reads, "employment-related defamation, libel, slander, disparagement, false imprisonment,

elements: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." Kim v. Forest, 183 Wn. App. 1033, 1033 (2014) (quoting Elcon Const., Inc. v. E. Washington Univ., 174 Wn. 2d 157, 166 (2012)). "The six elements of negligent misrepresentation are (1) that a defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in business transactions, (3) the defendant was negligent in obtaining or communicating false information, (4) the plaintiff relied on the false information supplied by the defendant, (5) that the plaintiff's reliance on the false information supplied by the defendant was justified, and (6) the false information was the proximate cause of damages to the plaintiff." Shepard v. Holmes, 185 Wn. App. 730, 742 (2014) (citing Borish v. Russell, 155 Wn. App. 892, 905 n.7 (2010)).

Plaintiff did allege that "Peder accepted [] Stevenson's offer and stayed in his position with X10 instead of pursuing other employment and business opportunities." Ex. G, Dkt. #28-2 at ¶ 15. She also alleged that, "[b]ased on the representations and requests made by X10, [] Peder performed the aforementioned valuable services and expected to be compensated for this work. X10 benefited from the value of [] Peder's services." Id. at ¶ 20. However, she did not anywhere allege that the information was false and was known to be false, see Kim, 183 Wn. App. at 1033, or that the information was negligently obtained or communicated. Shepard v. Holmes, 185 Wn. App. at 742. Her claim, as defendants point out, "relate[s] to unfulfilled promises and unjust enrichment, not false material facts." Dkt. #29 at 12. It is not an

---

misrepresentation, malicious prosecution, or invasion of privacy." Ex. H, Dkt. #28-2 at 38. "Under the doctrine of *noscitur a sociis*, 'the meaning of words may be indicated or controlled by those with which they are associated.'" Port of Seattle v. State, Dep't of Revenue, 101 Wn. App. 106, 113 (2000) (quoting State v. Jackson, 137 Wn. 2d 712, 729 (1999)).

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 13

Employment Practices Claim based on an Employment Practices Wrongful Act. See Ex. H, Dkt. #28-2 at 38. These damages are excluded under the Policy.

### F. Statutory Double Damages and Attorney's Fees

In the Underlying Action, plaintiff's claim for failure to pay wages was brought pursuant to RCW 49.48 *et seq* and RCW 49.52 *et seq*. Ex. G, Dkt. #28-2 at ¶¶ 23–24. Any employer who "[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract … shall be guilty of a misdemeanor." RCW 49.52.050(2). An employer who violates RCW 49.52.050(2) "shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070. Plaintiff claimed both double damages and attorney's fees. Ex. G, Dkt. #28-2 at 27.

Defendants argue that plaintiff's claims for statutory double damages and attorney's fees are not covered under the Policy, because they do not allege an "Employment Claims Wrongful Act." Dkt. #29 at 12; see Ex. H, Dkt. #28-2 at 38. First, plaintiff responds that defendants are estopped from making this argument at this stage.[9] Under Washington's Unfair Claims

---

[9] Defendants in turn argue that plaintiff cannot raise this "new argument" concerning estoppel in a reply brief and moves to strike these portions of plaintiff's reply. Dkt. #35. "As a general rule, a movant may not raise new facts or arguments in his reply brief." Cascade Yarns, Inc. v. Knitting Fever, Inc., No. 2:10-CV-861 RSM, 2014 WL 11881033, at *3 (W.D. Wash. Apr. 14, 2014) (quoting Quinstreet, Inc. v. Ferguson, 2008 WL 5102378, at *4 (W.D. Wash. 2008)). However, plaintiff was responding to the argument raised by defendants that her claims for doubled damages and attorney's fees are excluded under the Policy—an argument that, the Court notes, defendants did not choose to raise anywhere in their own motion for summary judgment. See Dkt. #29 at 12; see generally Dkt. #26. Plaintiff has not "go[ne] beyond simply responding to the arguments raised by [d]efendants in opposition to the motion." Shulman v. Amazon.com, Inc., No. C13-0247 RSM, 2014 WL 12665724, at *2 (W.D. Wash. Dec. 11, 2014), aff'd, 658 F. App'x 356 (9th Cir. 2016)). She is merely responding to an argument raised in defendants' opposition. Liberty Mut. Fire Ins. Co. v. City of Seattle, No. C15-1039-JCC, 2017 WL 2600167, at *3 (W.D. Wash. June 15, 2017).

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 14

Settlement Practices Regulation, an "insurer must not deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to the specific provision, condition, or exclusion is included in the denial. The denial must be given to the claimant in writing and the claim file of the insurer must contain a copy of the denial." WAC 284-30-380. Defendants did not in any of their correspondence with X10 or with plaintiff deny that plaintiff's claims for attorney's fees and double damages constituted an Employment Practices Claim under the Policy. They based their denial of coverage on the definition of "Loss." Scottsdale's initial reservation of rights letter stated that plaintiff's claims for quantum meruit and promissory estoppel were not covered, but otherwise clarified that, "since an Employment Practices Claim based on alleged Employment Practices Wrongful Act [*sic*] against an Insured ha[d] been brought on behalf of a former Employee within the meaning of the Policy, coverage [would] be afforded to X10 …" Ex. I, Dkt. #28-3 at 2–8. The same is true of Scottsdale's letters dated April 10, 2013, July 22, 2013 and August 21, 2017. See Ex. K, Dkt. #28-3 at 14–20; Ex. M, Dkt. #28-3 at 31–32; Ex. Q, Dkt. #28-6 at 24–28.

WAC 284-30-380 does not automatically have a preclusive effect. "[P]reclusion or estoppel is inappropriate absent either prejudice or bad faith." Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn. 2d 55, 62 (2000). However, plaintiff also claims that had Scottsdale raised this ground earlier, she "could have amended her complaint in [the Underlying Action] to state what the other pleadings and evidence in that suit made obvious—that is, that [her] "Failure to Pay Wages" claim sought statutory double damages and attorney fees for X10's breach of its contractual obligations to pay [] Peder all three categories of unpaid compensation alleged in that suit." Dkt. #33 at 12. "[I]f an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds. Bosko v. Pitts & Still, Inc., 75 Wn. 2d 856, 864 (1969) (citing Moore v. National Accident Soc'y, 38 Wn. 31 (1905)).

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 15

The Court agrees that Scottsdale should be estopped from asserting this new coverage defense. However, for the sake of completeness, the Court also finds that plaintiff's claims for attorney's fees and double damages are covered under the Policy. The Policy provides for coverage for Employment Practices Claims made against X10 for an Employment Practices Wrongful Act. Ex. H, Dkt. #28-2 at 37. An Employment Practices Wrongful Act is defined to include "breach of an actual or implied employment contract." Id. at 38. In plaintiff's complaint against X10, her claim for double damages and attorney's fees was brought pursuant to RCW 49.48.030 and RCW 49.52.070. Ex. G, Dkt. #28-2 at 27. RCW 49.52.070 imposes liability based on violations of *inter alia* RCW 49.52.050, which in turn makes it a misdemeanor for an employer to "pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, *or contract*." RCW 49.52.050(2) (emphasis added).[10] Plaintiff's claim for double damages and attorney's fees is therefore covered under the Policy.

Furthermore, the damages are not excluded by the Policy's definition of Loss. Ex. H, Dkt. #28-2 at 39. They were not owed under an employment contract or as wages.[11] Hill v. Garda CL Nw., Inc., 191 Wn. 2d 553, 573, (2018) ("Exemplary damages under RCW 49.52.070

---

[10] Plaintiff's motion for partial summary judgment in the Underlying Action also clarified that her claim for doubled damages and attorney's fees was based on the unpaid severance and cashed-out vacation time. Ex. AA, Dkt. #30-1 at 13–16. Her claim for the unpaid severance was based on an oral contract between Stevenson and Peder. Ex. AA, Dkt. #30-1 at 12 ("It is uncontroverted that Peder … entered into an agreement with X10 by which Peder was promised severance … X10 breached that agreement by failing to pay Peder such severance and unilaterally determining that Peder would be owed no further money."). Her claim for the cashed-out vacation pay was based on "X10 employee handbooks and policies." Id. In her "Motion for Determination of Reasonableness of Monetary Settlement," plaintiff again "assert[ed] that in addition to recovering actual damages for the vacation benefit cash-out, severance package, and previously uncompensated work [] Peder performed, [she] would recover her attorney fees, costs, and statutory double damages." Ex. BB, Dkt. #30-2 at 23. She also argued that the "facts in the record … establish[ed] that X10 breached (1) the employment contract [] Stevenson made with [] Peder for a severance payment, (2) the contractual provision in its Employee Handbook for the payment of a vacation benefit cash-out, and (3) the implied employment contract to compensate him for work performed … after being taken off X10's payroll."

[11] In fact, the Policy's definition of Loss specifically includes "Costs, Charges and Expenses," see Ex. H, Dkt. #28-2 at 39, which in turn includes at least "reasonable and necessary legal costs, charges, fees and expenses incurred by [X10] in defending Claims …" Id. at 37.

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 16

are therefore designed to 'punish and deter' an employer's blameworthy conduct, not to compensate the worker for harm caused by such conduct.") (internal citation omitted); cf. Big 5 Corp. v. Gulf Underwriters Ins. Co., No. CV 02-3320WJR(SHX), 2003 WL 22127029, at *3 (C.D. Cal. July 14, 2003) ("The Court is inclined to find that an award of attorneys' fees cannot exist independent of a damages award. Accordingly, if the [d]efendant has no responsibility to indemnify [the p]laintiff for its payment of unpaid overtime wages … neither should it be re[q]uired to indemnify [the] [p]laintiff for the costs of litigating the … lawsuit."). At a minimum, "Washington law is … unclear with respect to where RCW 49.52.070 lies on the spectrum between purely remedial and purely punitive." Brown v. MHN Gov't Servs., Inc., 178 Wn. 2d 258, 271 (2013); see Morgan v. Kingen, 141 Wn. App. 143, 161–62 (2007), aff'd, 166 Wn. 2d 526 (2009), as corrected (Nov. 9, 2009) (noting that "the damages are exemplary damages, *not merely* compensatory. As exemplary damages, they are intended to punish and deter blameworthy conduct.") (emphasis added). This is distinct from an amount that is "owed," whether as wages or under an employment contract. Ex. H, Dkt. #28-2 at 39. Nor are these uninsurable restitutionary claims. See Dkt. #29 at 7 (conceding that the issue is not dispositive and that "no Washington court has directly ruled that restitutionary claims are uninsurable as a matter of law.").

Plaintiff's claims for double damages and attorney's fees are covered under the Policy. As plaintiff's judgment is undifferentiated, she need only prove that any one of her claims is covered under the Policy in order to establish Scottsdale's liability. Prudential Prop. & Cas. Ins. Co., 45 Wn. App. at 121 (1986). The Court also need not reach plaintiff's alternative argument that the judgment is covered under the Wage and Hour Claim Endorsement. Dkt. #24 at 28–29; Dkt. #26 at 14–15; see Ex. H. Dkt. #28-2 at 85.

## **CONCLUSION**

For all the foregoing reasons, plaintiff's cross-motion for summary judgment, Dkt. #24, is GRANTED. Defendants' cross-motion for summary judgment Dkt. #26, is DENIED. The Court hereby DECLARES that plaintiff's judgment for $550,000 is covered under Scottsdale's Policy.

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 17

DATED this 8th day of August, 2019.

　　　　　　　　　　　　　　　　　　　_/s/ Robert S. Lasnik_
　　　　　　　　　　　　　　　　　　　Robert S. Lasnik
　　　　　　　　　　　　　　　　　　　United States District Judge

ORDER ON PLAINTIFF AND DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT - 18